Filed 9/30/15  Evans v. Magid CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JEREMY EVANS, | B260883 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC545810) |
| v. | |
| ELIAS MAGID et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick C. Shaller, Judge.  Affirmed.

Donald E. Iwuchukwu and Metu C. Ogike for Plaintiff and Appellant.

Safarian & Baroian and Harry A. Safarian for Defendants and Respondents.

_____

Jeremy Evans sued his former landlords, Elias Magid and Digam LLC (Magid), on several grounds after Magid evicted Evans from his apartment. One of Evans's causes of action alleged that Magid violated Government Code section 12955 by discriminating against him on the basis of disability. Magid filed a special motion to strike the discrimination cause of action under the "anti-SLAPP" (strategic lawsuit against public participation) statute. (Code Civ. Proc., § 425.16.)[1] The trial court granted the motion and struck the cause of action. Evans appealed pursuant to section 904.1, subdivision (a)(13).

We hold that Evans's cause of action for disability discrimination arose from Magid's exercise of his right to petition, and that Evans has failed to demonstrate a probability of success on the merits of his cause of action. Accordingly, we affirm the trial court's grant of the anti-SLAPP motion.

## FACTS AND PROCEEDINGS BELOW

In 2011, Evans agreed to rent an apartment in West Hollywood from Magid. At some later point, Magid served Evans a three-day notice to vacate the premises, and Evans was ultimately evicted.

Evans filed a complaint against Magid in May 2014, alleging that the property had numerous structural defects that Magid had failed to repair, and that the apartment was infested by roaches and bedbugs. In addition, Evans claimed that Magid engaged in retaliatory discrimination by serving him with a notice to vacate the apartment because Evans kept a service dog in his apartment to help him with a disability.

Magid filed a special motion to strike the discrimination cause of action pursuant to section 425.16, the anti-SLAPP statute. Magid contended that the discrimination allegation interfered with his First Amendment right to petition the government, and that Evans's cause of action was meritless. The court agreed and granted the motion to strike the discrimination claim.

---

[1] Unless otherwise specified, further citations are to the Code of Civil Procedure.

## DISCUSSION

The anti-SLAPP statute allows a defendant in a civil case to make a special motion to strike any cause of action "arising from any act of [the defendant] in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) The motion should be granted "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (*Ibid.*) Under the statute, the act in furtherance of a defendant's right of petition or free speech includes "any written or oral statement or writing made before a . . . judicial proceeding, or any other official proceeding authorized by law." (*Id.*, subd. (e).)

In ruling on a motion to strike pursuant to section 425.16, a court must employ "a two-step process. First, the court must determine '"whether the defendant has made a threshold showing that the challenged cause of action [arises from] a protected activity."'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733 [3 Cal.Rptr.3d 636, 74 P.3d 737].) Second, if the defendant makes this showing, the trial court must determine '"whether the plaintiff has demonstrated a probability of prevailing on the claim."'" (*Ibid*.) The burden is on the defendant on the first prong to show the action is within the statute; if the defendant succeeds, the burden shifts to the plaintiff to establish a probability of prevailing. (Citation.)" (*Ben-Shahar v. Pickart* (2014) 231 Cal.App.4th 1043, 1050 (*Ben-Shahar*).) We review a trial court's ruling on an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

I.  *Whether the Cause of Action Arises From a Protected Activity*

In his complaint, Evans claims that he "was subjected to retaliatory discrimination when defendant served him with a notice to vacate the premises because of [his] service dog." Filing a three-day notice to evict constitutes protected activity under section 425.16 because it is a prerequisite to filing an unlawful detainer lawsuit, which is itself an exercise of the constitutional right to petition. (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281–283 (*Birkner*); *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1186 (*Wallace*); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 (*Navellier*).)

3

Although Evans's suit followed Magid's protected activity, it does not automatically follow that his cause of action "ar[ose] from" protected activity for purposes of section 425.16. The key question is whether a landlord's protected activity "merely 'preceded' or 'triggered' the tenant's lawsuit," in which case the anti-SLAPP motion fails, "or whether it was instead the 'basis' or 'cause' of that suit," in which case the anti-SLAPP motion may succeed. (*Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1289 (*Clark*); see also *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)

In general, when "the sole basis of liability asserted in the tenant's complaint is the filing and prosecution of [an] unlawful detainer action," courts have granted special motions to strike under section 425.16. (*Ben-Shahar*, *supra*, 231 Cal.App.4th at p. 1051.) For example, in *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467 (*Feldman*), a landlord filed an unlawful detainer complaint against tenants in an apartment building. (*Id.* at p. 1475.) The tenants filed a cross-complaint, bringing allegations of retaliatory eviction, negligence, negligent misrepresentation, and breach of contract, among others. (*Id*. at pp. 1474-1475.) The landlord filed an anti-SLAPP motion to strike the complaint, contending that the tenants' causes of action arose from protected activity. (*Id*. at p. 1476.) The Court of Appeal reversed the trial court's denial of the motion with respect to most of the causes of action, finding that the landlord's alleged misconduct consisted of only protected activity, namely serving a notice to quit, filing the unlawful detainer, and making "threaten[ing]" statements in anticipation of litigation. (*Id*. at pp. 1483-1484.) The tenants' suit was based on these protected activities, not merely triggered by them. (*Ibid.*)

The court applied similar reasoning to reverse the denial of a special motion to strike in *Birkner*, *supra*, 156 Cal.App.4th 275. There, the landlord filed a notice to terminate the tenancy of tenants in a San Francisco apartment so that the landlord could move his mother into the apartment. (*Id*. at p. 279.) The tenants claimed that they were protected from eviction under the local rent ordinance and sued on several causes of action. (*Id*. at pp. 278-279.) The landlord moved to strike the complaint on anti-SLAPP grounds. (*Id*. at p. 278.) The Court of Appeal ruled in favor of the landlord, noting

4

that "plaintiffs' causes of action do not challenge the validity of the Rent Ordinance or any activity by [the landlord] that preceded the service of the termination notice." (*Id.* at p. 283.) Consequently, the tenants' causes of action were based on the landlord's protected activity. (*Id.* at pp. 282-283.)

On the other hand, when the plaintiff's cause of action includes allegations of actions by the landlord separate from and in addition to the landlord's protected activity, courts have rejected anti-SLAPP motions. (*Ben-Shahar*, *supra*, 231 Cal.App.4th at p. 1051.) Thus, in *Clark*, *supra*, 170 Cal.App.4th 1281, a tenant filed suit against her landlord alleging, among other things, that the landlord had violated the Los Angeles Rent Stabilization Ordinance by evicting her from her apartment on the pretense that the landlord's daughter could occupy it, then leaving the apartment empty pending renovation and reletting at a higher rent. (*Id.* at pp. 1284-1285.) The landlord filed an anti-SLAPP motion, contending that the tenant's suit arose from protected statements made in proceedings before the Los Angeles Housing Department and in an unlawful detainer action. (*Id.* at p. 1285.) The Court of Appeal overturned the trial court's grant of the motion to strike on the ground that the suit was based not on the landlord's protected activity, but rather on her alleged fraud in violating the rent stabilization ordinance. (*Id.* at pp. 1289-1290.) Her protected activity in filing the unlawful detainer action was merely a trigger. (*Id.* at p. 1290.)

Similarly, in *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, the plaintiff rent control board filed a complaint alleging that the defendant landlord had engaged in a scheme to skirt rent control regulations and rent two apartments at a higher rate than the law allowed. (*Id.* at pp. 1311-1312.) The landlord filed an anti-SLAPP motion, contending that the suit was based on its protected activity of seeking redress through the statutory procedure required to obtain rent increases. (*Id.* at p. 1315.) The Court of Appeal disagreed, reversing the trial court's grant of the special motion to strike because the basis of the suit was the landlord's alleged noncompliance with the rent control law. (*Id.* at p. 1318.) The landlord's

protected activity in submitting documents to the rent control board merely triggered the lawsuit. (*Ibid.*)

The current case is more akin to *Birkner* and *Feldman*, *supra*, than to *Clark* and *Pearl Street*, in that the entire basis for Evans's cause of action appears to be protected activity. In his complaint, Evans claims that "[d]efendants violated California Government Code [s]ection 12955 by discriminating against [p]laintiff on the basis of his disability. Specifically, [p]laintiff was subjected to retaliatory discrimination when defendant served him with a notice to vacate the premises because of plaintiff's service dog." The service of a notice to vacate, of course, constituted protected activity. (*Birkner*, *supra*, 156 Cal.App.4th at pp. 281–283.) The complaint describes other alleged bad behavior by Magid, including that he failed to fix a leaking roof or deal with bedbug and roach infestations, and that he used the premises for unspecified "activities not approved by the local municipal ordinance." Evans also alleged that Magid told him, "'I don't want low income people in my building anymore.'" Nowhere in the complaint, however, does Evans point to an action by Magid that could be construed as discrimination on the basis of disability, other than Magid's protected activity of filing a three-day notice to vacate the apartment.

Contrary to Evans's assertions, it is not relevant that his cause of action claimed discrimination on the basis of disability, rather than wrongful eviction. Our Supreme Court has stated that "[t]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier*, *supra*, 29 Cal.4th at p. 92.) Accordingly, in *Feldman*, *supra*, 160 Cal.App.4th 1467, the court held that the anti-SLAPP statute barred causes of action for retaliatory eviction, negligence, breach of the implied contract of quiet enjoyment, wrongful eviction, breach of contract, and unfair business practices, because all of these were based on the same protected activity by the landlord. (*Id.* at pp. 1475, 1484.) This principle does not change when a plaintiff alleges discrimination on the basis of disability. (*Wallace*, *supra*, 196 Cal.App.4th at pp. 1188-1190.)

6

In arguing against the trial court's grant of the anti-SLAPP motion, Evans relies primarily on *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273 (*DFEH*). In *DFEH*, a landlord decided to remove a building from the rental market and, pursuant to the requirements of the Ellis Act (Gov. Code, § 7060 et seq.), served the building's tenants with notice that they would be required to leave within 120 days. (*Id.* at p. 1276.) Tenants who were disabled or met other criteria could remain in their apartments for up to one year, but only if they notified the landlord in writing. (*Id.* at p. 1277.) One of the tenants sent the required notice of her disability, but the landlord asked for documentation of the disability. (*Id.* at p. 1278.) The tenant provided a letter from her doctor, but the landlord was unsatisfied with the information in the letter. (*Id.* at p. 1279.) The organization representing the tenant refused to provide more documentation, and the landlord filed an unlawful detainer. (*Id.* at pp. 1279-1280.) The Department of Fair Employment and Housing filed suit against the landlord, alleging disability discrimination, and the landlord responded with an anti-SLAPP motion. (*Id.* at p. 1280.) The Court of Appeal affirmed the trial court's denial of the anti-SLAPP motion, finding that "the communications and the actual eviction itself were not the acts attacked in DFEH's complaint. Instead, the allegations of wrongdoing in DFEH's complaint arose from Alta Loma's alleged acts of failing to accommodate Mangine's disability." (*Id.* at p. 1284.)

The crucial distinction between the current case and *DFEH* is that "DFEH . . . sued [the landlord] for its alleged acts in failing to make a reasonable accommodation for [the tenant's] disability." (*DFEH*, *supra*, 154 Cal.App.4th at p. 1285.) The protected activity was mere "*evidence* of [the landlord]'s alleged disability discrimination." (*Ibid.*) In the current case, by contrast, there was no distinction between the alleged discrimination and the protected activity. The protected activity of filing the notice to vacate was not evidence of discrimination, but was the alleged act of discrimination itself. (See *Feldman*, *supra*, 160 Cal.App.4th at p. 1484 [granting a special motion to strike because "[t]he activities that allegedly breached the contract *were* the protected activities"].) Because "the sole basis of liability asserted in the tenant's complaint" was

7

protected activity, the trial court was correct to find that Evans's cause of action arose from protected activity. (*Ben-Shahar*, *supra*, 231 Cal.App.4th at p. 1051.)

II.     *Whether the Plaintiff Has Shown a Probability of Success*

The second prong of the anti-SLAPP analysis is to determine whether the plaintiff has shown a probability of succeeding on his claim. (*Feldman*, *supra*, 160 Cal.App.4th at pp. 1477-1478.) The plaintiff bears the burden, but need make only a prima facie showing, "'akin to that of a party opposing a motion for summary judgment.'" (*Id*. at p. 1478.)

In this case, Evans failed to meet the burden because he failed to produce any evidence at all in support of his cause of action. His only support for his allegations was the unverified complaint, and "[i]n opposing an anti-SLAPP motion, the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.) In the absence of any such admissible evidence, the trial court was correct to find that he had not met his burden.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs of appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.                               MOOR, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.